IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 15, 2011

**STATE OF TENNESSEE v. KASEY N. MADDOX**

**Appeal from the Circuit Court for Bedford County**
No. 16966      Robert Crigler, Judge

**No. M2010-01444-CCA-R3-CD - Filed April 8, 2011**

The Defendant, Kasey N. Maddox, appeals the sentencing decision of the Bedford County Circuit Court. Following her guilty plea to the sale of .5 grams or more of cocaine, a Class B felony, the trial court imposed a nine-year sentence as a Range I, standard offender to be served in the Department of Correction. On appeal, the Defendant asserts that the trial court erred in denying alternative sentencing. After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Kasey N. Maddox.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On April 26, 2010, the Defendant pleaded guilty to and was convicted of the sale of .5 grams or more of a substance containing cocaine.[1] See Tenn. Code Ann. § 39-17-417. The underlying facts, as recited at the guilty plea hearing, are as follows:

It occurred on October 20th, 2009. This of course was a controlled buy made by the drug task force. A confidential informant.

The confidential informant actually engaged in I believe one or more recorded telephone calls between the [D]efendant and the confidential informant about purchasing crack cocaine.

There was also some discussion between the [D]efendant and the confidential informant about whether the confidential informant had been recently arrested and perhaps the [D]efendant had some concerns about that.

The confidential informant indicated that the confidential informant was going to have to be acquiring a vehicle before the confidential informant could come purchase the crack cocaine. The [D]efendant indicated that whoever [sic] was cooking the crack would have to cook it. It had not been done yet.

Ultimately made some arrangements to meet with the confidential informant, then searched the vehicle that the CI was using. That search that met with negative results.

The confidential informant was then followed to a location. I should say before going to that location was provided $100 with which to make a purchase of crack cocaine.

Also there was a recording device outfitted.

The [D]efendant was then observed arriving at that location in a separate vehicle.

The [D]efendant entered into the CI's vehicle.

---

[1] The Defendant was charged with alternative counts of sale and delivery of cocaine. The trial court merged the delivery count with the sale count.

Again there was discussion about whether the CI had just been recently arrested or not.

The [D]efendant ultimately handed a white piece of paper containing a rock-like substance to the CI and the CI handed back the $100 to the [D]efendant.

The [D]efendant then excited [sic] the CI's vehicle, went on her way and the CI left and met back with the task force agents and handed the drugs over to the task force agents. They also recovered the recording device.

The dope was sent to the lab. It weighed five tenths of a gram.

Following the acceptance of the Defendant's guilty plea, the trial court conducted a sentencing hearing. The State admitted the presentence report as an exhibit to the hearing. The presentence report reflects one conviction for failure to appear (the Defendant testified that this charge related to the present drug offense) and two driving under the influence (DUI) convictions. The DUI offense dates are noted as September 5, 2009, and October 19, 2009; the second date being just one day before the present offense was committed. The Defendant testified that she was out on bond for two different offenses in two different counties at the time she was arrested for this offense.

Director Timothy Lane of the 17th Judicial District Drug Task Force testified that he had held his current position for approximately sixteen years. Director Lane characterized the crack cocaine problem in Bedford County as "a severe problem[,]" stating that crack cocaine was "one of the most prevalent drugs" in the district over his sixteen-year tenure with the drug task force. According to Director Lane, there was a need to deter the activity of people selling and delivering crack cocaine within the district.

The twenty-year-old Defendant then testified. She stated that she lived in Chattanooga with her mother and one-year-old daughter and that her daughter depended on her for care and support. When asked about her employment, the Defendant advised that, about three days before the sentencing hearing, she obtained a full-time job at a Hilton Hotel cleaning rooms.

The Defendant acknowledged that she had a previous criminal history and that she had not paid any of her court-ordered fees. However, she claimed to have the money to pay her fees, although she had not done so at the time of hearing. The Defendant also admitted that she failed to return the presentence questionnaire or meet with her probation officer, explaining that she was unable to obtain transportation to Bedford County. It is noted in the

presentence report that the Defendant was given the questionnaire and scheduled an appointment immediately after she entered her plea. However, the Defendant called and cancelled her appointment twice, and she failed to show up for the third appointment and did not reschedule.

The Defendant claimed that, if released, she would stay off drugs and be able to comply with the conditions of release. She also stated that she wanted "to be there" for her one-year-old daughter and to care for her ill mother.

At the conclusion of the sentencing hearing, the trial court found two enhancement factors applicable in setting the length of the Defendant's sentence: The Defendant had a previous history of criminal convictions or behavior and, at the time the felony was committed, the Defendant was released on bail or pretrial release. See Tenn. Code Ann. § 40-35-114(1), (13). The trial court acknowledged that the Defendant's conduct neither caused nor threatened serious bodily injury and that she entered an open plea of guilt but assigned "slight" weight to those considerations as mitigating factors. See Tenn. Code Ann. § 40-35-113(1), (13). Weighing these factors, the trial court imposed a sentence of nine years for the Defendant's conviction. The trial court also determined that the Defendant was not an appropriate candidate for alternative sentencing and ordered that her sentence be served in the Department of Correction. The Defendant filed the instant timely appeal.

**Analysis**

The Defendant asserts that she was improperly denied an alternative sentence, noting as factors in her favor that "she never got the chance to try probation[,]" that she is young, that she has a child to care for at home, and that she did obtain employment prior to the hearing. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

-4-

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing. Our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should* be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." Tenn. Code Ann. § 40-35-102(5), (6) (emphasis added). No longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347.

The following considerations provide guidance regarding what constitutes "evidence to the contrary":

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1); see also Carter, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2), (4). The

court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. Tenn. Code Ann. § 40-35-103(5).

In considering the Defendant's request for alternative sentencing, the trial court found as follows:

> In this case there has been no proof about the [D]efendant's education whatsoever.
>
> There has been no proof about any work history other than her testimony that she got a job Wednesday and worked two days. That is the extent that I would know about her work history.
>
> I do not find that in conjunction with her failure to cooperate and get a presentence report done, shows that she is favorable candidate for alternative sentencing.
>
> Also, in making that decision I do accredit Director Lane's testimony that confinement is particularly suited to provide an effective deterrent to people likely to commit similar offenses.
>
> The other factors to look at is whether confinement is needed to restrain a defendant who has a long history of criminal conduct.
>
> I can't say that she has a long history but she does have a history of criminal conduct.
>
> At her age, the younger the person is, the fewer convictions it takes to give some consideration to that. But she has a history of criminal conduct, albeit not necessarily a long history. The other is she has been on probation frequently or recently.
>
> Quite frankly the [c]ourt is not relying on that in denying alternative sentencing because actually she was placed on probation in those cases after the offense date although she was on bond for those two DUIs before—when she committed this offense. She had not been sentenced for them.
>
> So I can't say while she is on probation now for the DUIs and the failure to appear, I don't consider that a factor in denying alternative sentencing. I do find she is just not a suitable candidate for probation. If she

can't show up to get the information done for the presentence report, she is not going to comply with probation, Community Corrections or probation.

Accordingly, the trial court denied the Defendant's request for some form of alternative sentencing and ordered the Defendant to serve her sentence in confinement.

The Defendant's nine-year sentence resulted from her conviction for a Class B felony. Because the Defendant was convicted of a Class B felony, she is not considered as a favorable candidate for alternative sentencing. Contrary to the Defendant's assertions, Tennessee Code Annotated 40-35-102(5) does not set "a rebuttable presumption that early felony convictions should receive strong consideration for probation." In light of her Class B felon status, it is the Defendant who bears the burden of establishing suitability for an alternative sentencing option.

Based upon our de novo review, we conclude that the record supports the trial court's decision. The trial court denied an alternative sentence based upon the Defendant's social history, her criminal record, and the need to deter others likely to commit similar offenses.[2] The Defendant acknowledged that she failed to return her presentence questionnaire to her probation officer. At the outset of its sentencing ruling, the trial court recounted that the Defendant cancelled two appointments with her probation officer and then just failed to show up or reschedule her third appointment, and the trial court did not find the Defendant's explanation about lacking transportation to Bedford County plausible, noting that her DUIs and this offense occurred in two counties outside of Hamilton County (Chattanooga). We consider the Defendant's lack of candor in her testimony as a poor reflection on her potential for rehabilitation. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); see also State v. Michael R. Harness, No. E2004-01946-CCA-R3-CD, 2005 WL 2515780, at *5 (Tenn. Crim. App., Knoxville, Oct. 11, 2005) (court denied alternative sentencing finding, among other factors, defendant had not shown enough accountability for the offense). No employment history was presented other than the Defendant's testimony that she had recently obtained employment, just days before the hearing, nor was any education history presented. Although she claimed to have the money to pay her court-ordered fees, she had not done so prior to the hearing. The Defendant admitted that she failed to appear for a court appearance in this case, and this offense occurred just one day after her release for the October 19, 2009 DUI charge. She was on bond for two different offenses in two different counties at the time

_____

[2] In her brief, the Defendant states that denial of probation to avoid depreciating the seriousness of the offense is normally reserved for violent, horrifying, shocking, reprehensible, offensive, or excessive/exaggerated offenses. See State v. Zeolia, 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996) (quoting State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995)). While this is a correct statement, the trial court did not rely on this factor in denying the Defendant an alternative sentence.

she committed this offense. The trial judge noted that, although the Defendant did not have a long criminal history, her history was of some consideration due to her young age and the number of charges she had amassed.

The trial court properly considered the sentencing principles and all relevant facts and circumstances. Upon de novo review and in accordance with the presumption of correctness, we are unable to conclude that the trial court erred or abused its discretion in denying the Defendant an alternative sentence.

## CONCLUSION

Based on the foregoing reasoning and authorities, we conclude that the trial court did not err in denying the Defendant an alternative sentence. The judgment of the Bedford County Circuit Court is affirmed.

_____
DAVID H. WELLES, JUDGE